**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PLUSFUNDS GROUP, INC., | ) |
| a Delaware Corporation | ) |
| | ) Case No. 06-10402 (JMP) |
| Debtor. | ) |
| | ) |

# MEMORANDUM DECISION DENYING MOTION TO REOPEN CASE

BROWN RUDNICK LLP
*Attorneys for Trustee*
Seven Times Square
New York, NY 10036

    David J. Molton, Esq.
    Daniel J. Saval, Esq.

DLA PIPER, LLP
*Attorneys for Aaron Objectors*
1251 Avenue of the Americas
New York, NY 10020

    Gregg M. Galardi, Esq.

DLA PIPER, LLP
*Attorneys for Aaron Objectors*
300 Campus Drive
Suite 100
Florham Park, NJ 07932

    Andrew O. Bunn, Esq.

BEUS GILBERT PLLC
*Litigation Counsel Representing the Joint and Official Liquidators and the SPhinX Trustee*
31 West 52nd Street
New York, NY 10019

    Dennis K. Blackhurst, Esq.

JAMES M. PECK
United States Bankruptcy Judge

*Introduction*

Harbour Trust Co. Ltd. (the "Trustee"), as trustee of the SPhinX Trust (the "Trust"), has moved to reopen the chapter 11 case of PlusFunds Group, Inc. (the "Debtor") in order to obtain Bankruptcy Court authorization to extend the term of the Trust. The Trustee's motion is opposed by certain parties (the "Aaron Defendants") who are defendants[1] in civil actions initiated by the Trustee. For the reasons stated in this decision, the Trustee's motion is denied.

*Background*

The Debtor filed for relief under chapter 11 of the Bankruptcy Code on March 6, 2006. The Debtor's plan of reorganization (the "Plan") was confirmed on August 7, 2007 and became effective on September 20, 2007. The Plan, among other things, contemplated the creation of the Trust pursuant to the SPhinX Funds Trust Agreement dated September 20, 2007 (the "Trust Agreement"). The primary purpose of the Trust was to liquidate certain causes of action (the "Causes of Action") for the exclusive benefit of the joint official liquidators of the SPhinX Funds.[2] Declaration of Dennis K. Blackhurst In Support Of Motion Of SPhinX Trustee For Approval of Initial Extension of SPhinX Trust Agreement, dated February 11, 2013, at ¶ 6, ECF No. 774 ("Blackhurst Declaration").

---

[1] The Aaron Defendants are comprised of Robert Aaron; Derivatives Portfolio Management, Ltd.; Derivatives Portfolio Management, LLC; DPM Mellon Limited; and DPM Mellon, LLC.

[2] The SPhinX Funds are comprised of the following entities: SPhinX, Ltd.; SPhinX Strategy Funds, Ltd.; PlusFunds Manager Access Fund SPC, Ltd.; SPhinX Plus SPC Ltd.; SPhinX Distressed Ltd.; SPhinX Merger Arbitrage Ltd.; SPhinX Special Situations Ltd.; SPhinX Marco Ltd; SPhinX Long/Short Equity Ltd; SPhinX Managed Futures Ltd; SPhinX Equity Market Neutral Ltd; SPhinX Convertible Arbitrage Ltd; SPhinX Fixed Income Arbitrage Ltd; SPhinX Distressed Fund SPC; SPhinX Merger Arbitrage Fund SPC; SPhinX Special Situations Fund SPC; SPhinX Marco Fund SPC; SPhinX Long/Short Equity Fund SPC; SPhinX Managed Futures Fund SPC; SPhinX Equity Market Neutral Fund SPC; SPhinX Convertible Arbitrage Fund SPC; and SPhinX Fixed Income Arbitrage Fund SPC. *See* Plan, Ex. 3, ECF No. 454.

2

On March 5, 2008, the Trustee commenced an action (the "Action") in the Superior Court of New Jersey against the Aaron Defendants. The Action subsequently was transferred to the United States District Court for the Southern District of New York pursuant to an order of the Judicial Panel for Multi-District Litigation.

On December 3, 2010, while the Action was pending, the Debtor moved to close its chapter 11 case and in a supporting declaration indicated that the Trustee confirmed that "the SPhinX Trust does not anticipate any need for the Debtor's Chapter 11 Case to remain open." Declaration of Luke C. Goetz In Support of the PlusFunds Trustee's Motion For Final Decree Closing PlusFund's Chapter 11 Case, Pursuant to 11 U.S.C. § 350 And Fed. R. Bankr. P. 3022, dated December 3, 2010, at ¶ 8, ECF No. 765, at Ex. A ("Goetz Declaration"). The Court entered an order closing the case on December 22, 2010. ECF No. 769.

*Efforts to Extend the Trust Term*

The Trust is designed to terminate automatically after five years unless the term is extended in accordance with the requirements of Section 10.3 of the Trust Agreement. This section calls for termination of the Trust on the date that is five years after the Effective Date of the Plan – September 20, 2012 (the "Trust Termination Date"). The Bankruptcy Court for cause may extend the Trust Termination Date in successive one year increments provided that approval is obtained no earlier than six months prior to the date that the Trust is scheduled to terminate. Language from this pivotal section of the Trust Agreement is set forth below:

> Termination After Five Years. If the SPhinX Trust has not been previously terminated pursuant to Section 10.2 hereof[3], on the fifth anniversary of the [Plan] Effective Date, unless otherwise extended for cause by the Bankruptcy Court, the Trustee shall distribute all of the Assets in accordance with the Plan and immediately thereafter, the SPhinX Trust shall terminate and the Trustee shall

---

[3] Section 10.2 of the Trust Agreement contemplated termination upon payment of all costs, expenses and obligations of the Trust, including distributions to the Trust's beneficiaries. Such payments had not been made as of the Trust Termination Date.

3

> have no further responsibility in connection therewith, except as provided in Section 10.4 below. Upon motion to the Bankruptcy Court, the Trustee shall have the right, with the approval of the Bankruptcy Court, to extend the SPhinX Trust for successive one year periods; provided, however, such approval shall be obtained no earlier than six months prior to the SPhinX Trust's then stated termination. Multiple extensions may be obtained so long as Bankruptcy Court approval is sought prior to the expiration of each extended term as provided in this Section 10.3 and so long as the Bankruptcy Court finds that the extension is necessary to the liquidating purpose of the SPhinX Trust.

Blackhurst Declaration, Ex. A at 11.

For reasons that have not been adequately explained[4] (but presumably are due to inattention to the strict requirements stated in Section 10.3 for extending the five year term), the Trustee failed to take any action to extend the term of the Trust within the six month window of time prior to the Trust Termination Date. On February 7, 2013, nearly five months after the Trust Termination Date, the Trustee, with the written consent of the Trust's advisory board, entered into the Second Amendment to the SPhinX Trust Agreement (the "Second Amendment") to allow the Trustee to extend the Trust's term after the Trust Termination Date. Blackhurst Declaration, at ¶ 5. Specifically, the Second Amendment added language to Section 10.3 attempting to cure the error in administration of the Trust and providing that

> the Trustee may seek approval of the initial one year extension within one hundred fifty (150) days of the [Trust Termination Date], and if so approved by the Bankruptcy Court, such initial extension shall be effective *nunc pro tunc* to the [Trust Termination Date].

Blackhurst Declaration, Ex. C at 2-3.

In order to effectuate the Second Amendment and extend the term of the Trust, the Trustee filed its motion for approval of the initial extension of the Trust (ECF No. 773) and motion to reopen the Chapter 11 case (ECF No. 777) (together, the "Trustee Motions"). The

---

[4] The Trustee points to an intensively demanding litigation schedule in prosecuting the Causes of Action during the period leading up to the Trust Termination Date as the reason for the failure to properly seek an extension of the Trust term. Blackhurst Declaration, at ¶¶ 7-10.

4

Aaron Defendants objected to both of the Trustee Motions (ECF Nos. 781, 783) (the "Extension Objection" and "Reopen Objection" respectively, and together, the "Aaron Objections") and the Trustee filed a reply to the Aaron Objections (ECF No. 785) (the "Trustee Reply").

According to the Aaron Defendants, the Chapter 11 case should not be reopened because the Trustee consented to the closing of the case and the Trustee is seeking simply to deal with its own failure to take appropriate steps to extend the term of the Trust. Reopen Objection, at ¶¶ 11-18. The Aaron Defendants also argue that (i) the Trustee has no authority to seek extension of the Trust that has terminated by its own terms, (ii) certain IRS Revenue Procedures relating to the tax treatment of liquidating trusts preclude the extension of the Trust, and (iii) the Court lacks jurisdiction to reinstate the Trust. Extension Objection, at ¶¶ 11-24.

The Trustee counters arguing that the case should be reopened to allow the Trustee to administer assets (i.e. the Causes of Action) and that "cause" exists to reopen the Chapter 11 case. Trustee Reply, at ¶¶ 18-22. The Trustee also provides a multi-tiered argument regarding the vitality of the Trust. Initially, the Trustee argues that the Trust never terminated because the Trustee has yet to distribute the Trust assets. *Id.* at ¶¶ 30-38. Second, the Trustee argues that any doubt as to the continued existence of the Trust has been clarified by the Second Amendment which allowed the Trustee to seek an initial extension of the Trust term within 150 days of the Trust Termination Date. *Id.* at ¶¶ 39-41. Third, the Trustee urges the Court to reestablish the Trust to the extent it is deemed terminated. *Id.* at ¶¶ 50-55. Fourth, the Trustee points out that even if the Trust were terminated, the Trustee's winding-up duties under the Trust Agreement includes the ability to continue prosecution of the Causes of Action and that the right to pursue the Causes of Action would revert to the Trust beneficiaries. *Id.* at ¶¶ 56-62. In

5

addition to addressing the substance of the Aaron Objections, the Trustee contends that the Aaron Defendants lack standing to object to the Trustee Motions. *Id.* at ¶¶ 10-17.

Counsel for the Trustee and the Aaron Defendants appeared at a March 20, 2013 hearing on the motion to reopen and presented oral argument.[5]

## *Discussion*

As an initial matter, the Court must determine the threshold issue of standing of the Aaron Defendants to object to a reopening of the PlusFunds Group, Inc. bankruptcy case.

### *Standing*

Section 1109(b) of the Bankruptcy Code provides guidance as to standing in the context of a chapter 11 proceeding and states that:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).

Given the above language, the question is whether the Aaron Defendants fit within the category "parties in interest." This term of art is not defined in the Bankruptcy Code. *Savage & Assocs. v. K&L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011) (citing *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)). The leading bankruptcy treatise explains Section 1109(b) as follows:

> The general theory behind the section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity (either directly or

---

[5] Citations in the form Hr'g Tr. __:__ refer to page and line numbers of the March 20, 2013 hearing transcript. Transcript available at ECF No. 787.

> through an appropriate representative) to participate in the adjudication of any
> issue that may ultimately shape the disposition of his or her interest.

7 ALAN RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1109.01 (16th ed. 2013). Courts must determine a party's standing on a case by case basis, and the categories mentioned in Section 1109 are not meant to exclude other types of interested parties. *Teligent*, 640 F.3d at 60 (citing *In re Johns-Manville corp.*, 36 B.R. 743, 747, 748 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985)).

Party in interest standing is not without limitations and "does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding." *Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re Refco Inc.)*, 505 F.3d 109, 117 n.10 (2d Cir. 2007) (citing *S. Blvd., Inc. v. Martin Paint Stores (In re Martin Paint Stores)*, 207 B.R. 57, 61-62 (S.D.N.Y. 1997) and *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989)); *see also In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011) ("Courts in this District, while generally interpreting section 1109(b) broadly, have limited "party in interest" standing where a party's interest in the proceedings is not a direct one.").

In the context of a motion to reopen a bankruptcy case, the Trustee cites to three chapter 7 cases where the court held that defendants in civil actions brought by the debtor or the debtor's representative lack standing to oppose an application to reopen the case. *See Riazuddin v. Schindler Elevator Corp. (In re Riazuddin)*, 363 B.R. 177, 183 (10th Cir. B.A.P. 2007) (defendant in civil suit lacked standing to object to debtors' motion to reopen their case to add a previously unscheduled personal injury claim against the defendant); *In re Phillips*, No. 09-28759, 2012 WL 1232008, *3 (Bankr. D.N.J. Apr. 12, 2012) (same); *In re Sweeney*, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2002) (defendants in state court litigation lacked standing to object to

7

chapter 7 trustee's motion to reopen case to allow trustee to retain counsel in the state court litigation); *see also In re Miller*, 347 B.R. 48, 52 (Bank. S.D. Tex. 2006) (party lacked standing to object to trustee's motion to reopen where the only relationship to the case related to being a defendant in a separate lawsuit); *cf. In re Alpex Computer Corp.*, 71 F.3d 353, 356-58 (10th Cir. 1995) (state court defendant lacked standing to move to reopen a bankruptcy case).

There are other cases, however, where courts have found standing for parties to object to motions to reopen whose connection to the case was as a defendant in a separate civil proceeding. *In re Lewis*, 273 B.R. 739, 742-43 (Bankr. N.D. Ga. 2006) (defendants in state court action had standing to object to debtor's reopening her case because of potential impact in both the bankruptcy case and the state court action); *In re Koch*, 229 B.R. 78, 82 (Bankr. E.D.N.Y. 1999) (defendant in civil suit was a party in interest because it had a disputed interest in estate property).

During oral argument, counsel for the Aaron Defendants argued that they have standing because one of the arguments for dismissal of the Action pending in the District Court is that the Trustee no longer has the authority to continue prosecution because of the Trust's termination. Hr'g Tr. 25:9-26:5. In essence, the Aaron Defendants submit that they have standing to oppose reopening the chapter 11 case because bankruptcy court approval of the recent changes made to the Trust Agreement conceivably would resolve questions as to the disputed extension of the term of the Trust. Such a resolution, in turn, would impact one of their procedural defenses in the Action.

There is little question that reopening of the case would have an impact on the Action inasmuch as reopening is not being proposed within a vacuum and is directly connected to the Trustee's related motion to authorize amending the language of Section 10.3 of the Trust

8

Agreement. Such bankruptcy relief when viewed together would have an adverse effect on the ability of the Aaron Defendants to continue asserting procedural defenses in the Action relating to the current legal status and viability of the Trust. In that sense, the Aaron Defendants have standing to complain about reopening of the bankruptcy case and are essentially the only parties with a motivation to object. However, being affected by the outcome of a proceeding is not the same as having a direct financial stake within the bankruptcy case and does not properly qualify for standing as a party in interest.

The Court concludes that the Aaron Defendants do not have standing as parties in interest to object to reopening of the Debtor's chapter 11 case. *See Riazuddin*, 363 B.R. at 183 ("[Objector's] claim that its defense in the personal injury case may be affected by the reopening is insufficient to give it a direct interest in the Debtor's bankruptcy case, and therefore, it lacked standing to oppose the motions to reopen."). But this narrow procedural determination does not eliminate the need for the Court to independently consider whether the Trustee has shown sufficient cause for Debtor's case to be reopened. That analysis is set forth below and, regardless of their standing to be heard, necessarily is animated to some extent by the objection of the Aaron Defendants. *See, e.g., Sweeney*, 275 B.R. at 733 ("the Court will necessarily address the substance of the State Court Action Defendants' objections to the granting of such relief notwithstanding such defendants' lack of standing to press such objections.").

*Motion to Reopen*

Federal Rule of Bankruptcy Procedure 5010 provides that a "case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed. R. Bankr. P. 5010. Section 350(b) of the Bankruptcy Code in turn provides that a case "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or

9

for other cause." 11 U.S.C. 350(b). Before reopening a closed case, the Court should make the threshold determination that the movant meets one of the three articulated grounds set forth in Section 350(b). *In re Lee*, 356 B.R. 177, 180 (Bankr. N.D. W.Va. 2006) (citations omitted). Bankruptcy Courts have broad discretion in deciding whether to open a closed case. *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011) (citing *In re Farley*, 451 B.R. 235, 237 (Bankr. E.D.N.Y. 2011) and *In re Lowery*, 398 B.R. 512, 514 (Bankr. E.D.N.Y. 2008)). The movant bears the burden to show cause for reopening the case. *In re Easley-Brooks*, 487 B.R. 400, 406 (Bankr. S.D.N.Y. 2013) (citing *In re Otto*, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004)). The Trustee argues that the case should be reopened to allow it to administer assets and for "cause." Trustee Reply, at ¶¶ 18-22.[6]

*Administration of Assets*

A closed case may be reopened to "administer assets." 11 U.S.C. 350(b). The Trustee contends that facilitating the ongoing prosecution of the Causes of Action meets this requirement, but that is a debatable assertion because the assets to be administered "must be assets that were not known at the time the case was closed." 3 Collier, *supra*, at ¶ 350.03[1]. Here the assets are the Causes of Action that not only were known when the case was closed in December 2010 but were the subject of pending litigation more than two years prior to closing of the case.

---

[6] The Aaron Defendants point out that the Trustee consented to the case being closed through a statement made by a Debtor representative in connection with its December 2010 application to close the case. Reopen Objection, at ¶¶ 5, 11. The Debtor representative stated that his "counsel has received confirmation from counsel for the SPhinX Trustee that the SPhinX Trust does not anticipate any need for the Debtor's Chapter 11 Case to remain open." Goetz Declaration, at ¶ 8. That hearsay statement may have been true in December, 2010, but has no relevance today in evaluating whether cause exists to reopen the case. The Court presumes that the Trustee neither anticipated the long period of time required to prosecute the Causes of Action or the mistake that occurred in administration of the Trust that lead to a failure to extend the term of the Trust in accordance with the original language of Section 10.3.

10

Even if the Causes of Action were to be deemed assets for purposes of the analysis under Section 350(b), the presumed benefit in reopening the case is unclear in light of the Trustee's own arguments indicating that the motion to reopen and to authorize the amendment to Section 10.3 will have only a limited effect on the ability to continue prosecution of the Causes of Action. These arguments include that (1) the Trust never terminated because no distributions have been made to the Trust beneficiaries, (2) prosecution of the Causes of Action is among the wind-up duties of the Trustee, and (3) even if the Trust is terminated, the ability to pursue the Causes of Action will be transferred to the Trust's beneficiaries. Trustee Reply, at ¶¶ 30-34, 56-62. Given these circumstances, the alleged need to reopen Debtor's case to administer assets provides insufficient justification to reopen the case.

*For Other "Cause"*

In the alternative, the Trustee urges the Court to reopen the case for cause. The Bankruptcy Code does not define "cause" to reopen a case. *Easley-Brooks*, 487 B.R. at 406 (citing *In re Cruz*, 254 B.R. 801, 804 (Bankr. S.D.N.Y. 2000)). When determining whether cause exists to reopen a case, the court "may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." *Id.* at 406-07 (citing *In re Emmerling*, 223 B.R. 860, 864 (2d Cir. B.A.P. 1997) and *In re Moyette*, 231 B.R. 494, 497 (E.D.N.Y. 1999)).

In a recent decision, my colleague Judge Glenn identified a number of factors relevant to the consideration of a request to reopen a case, including (1) the length of time that the case was closed, (2) whether a non-bankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case, (3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum, (4) whether any parties would suffer prejudice

11

06-10402-jlg    Doc 788    Filed 05/13/13    Entered 05/13/13 16:12:47    Main Document
    Pg 12 of 14

should the court grant or deny the motion to reopen, (5) the extent of the benefit by reopening, and (6) whether it is clear at the outset that no relief would be forthcoming by granting the motion to reopen. *Easley-Brooks*, 487 B.R. at 407 (citing *Otto*, 311 B.R. at 47). Applying these six factors to the facts demonstrate that there is insufficient cause to reopen the Debtor's case because there is a non-bankruptcy forum capable of addressing issues related to the Trust, there has been no showing of prejudice resulting from denial of the Trustee's request to reopen the case, and there is no clearly articulated benefit to the Trustee in reopening the case.[7]

Perhaps most importantly, issues relating to the Trust may be decided by a non-bankruptcy court that has jurisdiction to hear and determine both the Causes of Action and questions raised as to the ongoing viability of the Trust. The Causes of Action are pending in the District Court for the Southern District of New York and that court should be in a good position to determine the status of the Trust within the context of that litigation.

The consequences of the unexplained errors and omissions[8] of the Trustee with respect to extending the term of the Trust are uncertain. Given the arguments of the Trustee regarding the ability to maintain the Causes of Action and to establish grounds for ongoing activities of the Trust, it is difficult to conclude that reopening of the Debtor's case to consider approval of the initial extension of the Trust is needed to protect the beneficiaries of the Trust. The issues

---

[7] The other three factors (length of time case was closed; whether prior litigation determined the appropriate forum; whether it is clear that no relief is forthcoming by reopening the case) are not directly relevant to the analysis. While the case has been closed since December 2010, the Trustee would not have had any reason to request that the case be reopened to extend the Trust term until the months leading up to the Trust Termination Date (September 2012). Thus, the period of time between the closing of the case and the request to reopen is not a meaningful factor. As to the other two factors, no prior litigation has occurred regarding the appropriate forum for adjudicating issues related to interpretation of the Trust Agreement, and it is unnecessary to now determine whether appropriate relief is available to the Trustee as a result of opening the case.

[8] The Trustee's only explanation for failing to take action within the six month period before the Trust Termination Date is distraction caused by the demands of litigation. That is an inadequate excuse. No one has come forward to claim responsibility for the inadvertent failure to administer the Trust in strict compliance with its terms or to provide an explanation as to how this fairly obvious and avoidable mistake occurred. It is difficult for the Trustee to make a compelling appeal for extraordinary relief to fix this problem without making a better showing of both the excusable neglect that may have caused the problem in the first place and compliance with the requirements of Section 350(b) of the Bankruptcy Code.

presented involve the interpretation of the language of the Trust Agreement – a pure question of contract law.[9]  The District Court (or a state court) has the unquestioned authority to decide such issues.[10]

Second, it is not clear whether the Trustee will be prejudiced by denial of the Trustee Motions.  The Trustee will be able to litigate issues relating to the Trust's ongoing existence in the District Court.  Moreover, the Trustee's alleged ability to prosecute the Causes of Action indicates that there is no clear prejudice to the Trustee in declining to reopen the Debtor's case to address the remedial actions taken to cure the failure to extend the term of the Trust before the Trust Termination Date.  In this instance, not acting to reopen the case does not clearly and directly prejudice the Trustee.

Finally, the benefit to be realized from reopening the Debtor's case is speculative.  As the Trustee acknowledges, it will continue to prosecute the Causes of Action for the benefit of the Trust beneficiaries regardless of the disposition of the Trustee Motions.  Hr'g Tr. 15:1-16:3.  Thus, reopening the Debtor's case to consider the Second Amendment is not essential to preserve the Causes of Action.

*Conclusion*

For the reasons stated, the Trustee has failed to meet its burden to show cause to reopen the Debtor's case, and the case shall remain closed. For that reason, the Court is not taking action with respect to the Trustee's motion for approval of the initial extension of the Trust.

---

[9] The Aaron Defendants also argue that certain tax laws pertaining to liquidating trusts preclude the extension. Adjudication of such issues could also take place in a non-bankruptcy forum.

[10] The Second Amendment is a an attempt to revise the Trust Agreement in a manner that, if effective, would cure the failure to timely extend the term before the Trust Termination Date.  The Trustee Motions, when read together, are designed to validate this effort to patch over the mistake. Given the potential tax consequences associated with failing to timely extend, it is unknown whether this "patch" works from a tax perspective.  These issues, to the extent relevant, can be addressed by the District Court.

Based on the arguments presented, it appears that reopening is not essential to protect the interests of the beneficiaries of the Trust in the Causes of Action. Even if such relief were deemed to be essential to avoid a loss of those assets on account of the Trustee's negligence, reopening of the case would require satisfaction of the requirements of Section 350(b) of the Bankruptcy Code. This decision is without prejudice to a further request for relief by any party in interest seeking to reopen the Debtor's case for cause shown.

SO ORDERED.

Dated: New York, New York
      May 13, 2013

                                          *s/ James M. Peck*
                                      Honorable James M. Peck
                                      United States Bankruptcy Judge