NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                    :

In re                   :       Chapter 11

PLUSFUNDS GROUP, INC.,    :       Case No. 06-10402 (JLG)
a Delaware Corporation,     :

            Debtor.   :
------------------------------------------------------------------------x

**MEMORANDUM DECISION DENYING RENEWED MOTION OF THE SPHINX
TRUSTEE TO REOPEN CHAPTER 11 CASE FOLLOWING REMAND FROM THE
<u>UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT</u>**

BROWN RUDNICK LLP
*Attorneys for SPhinX Trustee*
*Attorneys for Official Liquidator of the SPhinX Funds*
Seven Times Square
New York, NY 10036

    David J. Molton, Esq.
    Andrew Dash, Esq.
    Daniel Saval, Esq.

BROWN RUDNICK LLP
*Attorneys for SPhinX Trustee*
*Attorneys for Official Liquidator of the SPhinX Funds*
One Financial Center
18th Floor
Boston, MA 02111

    Brian Rice, Esq.

BEUS GILBERT PLLC
*Attorneys for Official Liquidator of the SPhinX Funds*
701 North 44th Street
Phoenix, AZ 85008

    Leo R. Beus
    Timothy J. Paris

DLA PIPER, LLP
*Attorneys for Defendants*
1251 Avenue of the Americas
New York, NY 10020

    Gregg M. Galardi, Esq.
    Daniel G. Egan, Esq.

DLA PIPER, LLP
*Attorneys for Defendants*
51 John F. Kennedy Parkway
Suite 120
Short Hills, NJ 07078

    Andrew O. Bunn, Esq.

JAMES L. GARRITY, JR.
United States Bankruptcy Judge

*Introduction*

      Harbour Trust Co. Ltd., as trustee (the "Trustee") of the trust (the "SPhinX Trust") established pursuant to the terms of the confirmed Fifth Amended Plan of Liquidation of PlusFunds Group, Inc., dated June 28, 2007 ("Plan"), and that certain SPhinX Trust Agreement (the "Trust Agreement"), dated as of September 20, 2007, seeks for a second time to reopen the chapter 11 case of PlusFunds Group, Inc. ("PlusFunds" or the "Debtor"). The Trustee requests this relief in furtherance of its ultimate objective to extend the term of the SPhinX Trust, which terminates automatically after five years unless extended in accordance with the requirements of § 10.3 of the Trust Agreement.

      This Court considered a previous iteration of this request in February 2013. The Trustee filed a motion (the "Extension Motion") for approval of an amendment to the Trust Agreement whereby the Trustee would be allowed to extend the term of the SPhinX Trust after the termination date. A motion to reopen the bankruptcy case followed. The defendants of a 2008

2

lawsuit filed by the Trustee (the "Defendants")[1] in the Superior Court of New Jersey (the "Action") opposed both motions. After oral argument, the Court (Peck, J.)[2] issued a decision (the "Decision") denying the motion to reopen, and, therefore, did not consider the issue of whether to approve the amendment to the Trust Agreement. *In re PlusFunds Group, Inc.*, 492 B.R. 202, 211 (Bankr. S.D.N.Y. 2013) ("*PlusFunds I*"). On the Trustee's appeal, the district court affirmed the Decision in its entirety. *Harbour Trust Co. v. Aaron (In re PlusFunds Group, Inc.)*, 505 B.R. 419 (S.D.N.Y. 2014) ("*PlusFunds II*"). The Trustee subsequently appealed to the United States Court of Appeals for the Second Circuit (the "Second Circuit"). On January 21, 2015, the Second Circuit issued a Summary Order remanding the matter for further proceedings. *Harbour Trust Co. v. Aaron (In re PlusFunds Group, Inc.)*, 589 F. App'x. 41 (2d Cir. 2015) ("*PlusFunds III*"). The Second Circuit's mandate to this Court is "to explain what prejudice, if any, would result from opening the case." *Id.* at 43.

On February 13, 2015, the Trustee filed its Renewed Motion of the SPhinX Trustee to Reopen Chapter 11 Case Following Remand from the United States Court of Appeals for the Second Circuit (the "Motion") [ECF No. 808]. The Trustee argues that no cognizable prejudice to the Defendants exists in reopening this case, and, therefore, the Court should grant its request to reopen. The Trustee further submits that, upon reopening the case, the Court also should grant the Extension Motion and the Trustee's two subsequent requests for an extension of the SPhinX Trust through September 20, 2015.[3] Kenneth Krys (the "Liquidator"), as Official Liquidator[4] of

---

[1] The Defendants are Robert Aaron, Derivatives Portfolio Management, Ltd., Derivatives Portfolio Management, LLC, DPM Mellon Limited, and DPM Mellon, LLC.

[2] The Honorable James M. Peck retired from the bench on January 31, 2014. This case was reassigned to the Honorable James L. Garrity, Jr. on February 18, 2015.

[3] *See* Request of SPhinX Trustee for Approval of Second Extension of SPhinX Trust and Reservation of Rights [ECF No. 799]; Request of SPhinX Trustee for Approval of Third Extension of SPhinX Trust and Reservation of Rights [ECF No. 804].

the SPhinX Funds and the sole beneficiary of the SPhinX Trust, filed a joinder in support of the Motion. *See* Joinder of the Official Liquidator of the SPhinX Funds in the Renewed Motion of the SPhinX Trustee to Reopen Chapter 11 Case Following Remand from the United States Court of Appeals for the Second Circuit (the "Joinder") [ECF No. 813]. The Defendants oppose the Motion. *See* DPM Defendants' Response to the Renewed Motion of the SPhinX Trustee to Reopen Chapter 11 Case Following Remand from the United States Court of Appeals for the Second Circuit (the "Response") [ECF No. 814].[5]

For the reasons set forth below, the Court finds that no prejudice would result from reopening the case. Nonetheless, the Court further finds that the Trustee has failed to meet its burden under § 350 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended, to show cause to reopen the case. Accordingly, the Court denies the Trustee's request to reopen and will not address the request to grant the Extension Motion and subsequent requests to extend the term of the SPhinX Trust.

### *Factual and Procedural Background*

PlusFunds filed its chapter 11 case on March 6, 2006. *See PlusFunds I*, 492 B.R. at 204. Prior to commencing its case, PlusFunds was a privately-held financial services provider. Motion ¶ 11. Its investment management services offered certain private investment vehicles to qualified investors seeking exposure to hedge fund investments through the Cayman Islands-based SPhinX Funds. *Id.* Following (and precipitated in part by) the chapter 11 filing of Refco

---

[4] On or about February 23, 2015, the Cayman Islands court overseeing the SPhinX Funds' liquidation proceedings entered an order approving the resignation of Margot MacInnis as one of two Joint Official Liquidators of the SPhinX Funds. Kenneth Krys currently serves as the sole Official Liquidator of the SPhinX Funds, and the sole beneficiary of the SPhinX Trust. *See* Joinder (defined below) at 2, n.1.

[5] The Trustee also filed The SPhinX Trustee's Reply in Further Support of the Renewed Motion of the SPhinX Trustee to Reopen Chapter 11 Case Following Remand from the United States Court of Appeals for the Second Circuit (the "Reply") [ECF No. 816].

Inc., the SPhinX Funds commenced their own voluntary liquidation proceedings in the Cayman Islands. *Id.* ¶ 12.[6] Under the Plan, the SPhinX Funds hold an allowed unsecured claim in the sum of $250 million. *Id.* ¶¶ 11, 12.[7] The Plan provided for the creation of two trusts: the SPhinX Trust, the primary purpose of which was to liquidate certain causes of action for the exclusive benefit of the joint official liquidators of the SPhinX Funds;[8] and a "General Trust," vested primarily with cash for the benefit of the Debtor's other unsecured creditors. *Id.* ¶ 14. The Trust Agreement governs the SPhinX Trust.

The Trustee commenced the Action on March 5, 2008. *PlusFunds I*, 492 B.R. at 204. Defendants removed the Action from the state court to the United States District Court for the District of New Jersey (the "New Jersey District Court") where the action is currently pending.[9] *See* Response ¶7; Motion ¶ 29. On December 3, 2010, the trustee of the General Trust moved to close the Debtor's chapter 11 case. *PlusFunds I*, 492 B.R. at 204. In a supporting declaration, the trustee of the General Trust stated that it "has determined that the Debtor's estate has been fully administered" and that "the Sphinx Trust does not anticipate any need for the Debtor's Chapter 11 Case to remain open." *Id.* (citation omitted). This Court entered an order closing the case on December 22, 2010. [ECF No. 769.]

---

[6] The SPhinX Funds' liquidation proceedings (and, indeed, this chapter 11 case) also were precipitated by the commencement of an avoidance action by the Refco creditors' committee against once of the SPhinX Funds; the action sought recovery of approximately $312 million in allegedly preferential transfers. Motion ¶ 12. The action triggered a wave of redemption requests by investors in the SPhinX Funds. *Id.*

[7] Under the Plan, the SPhinX Funds agreed to provide $4 million to fund distributions to PlusFunds' other unsecured creditors. Motion ¶ 13.

[8] As described above, Kenneth Krys currently serves as the sole Liquidator of the SPhinX Funds, and the sole beneficiary of the SPhinX Trust.

[9] After the Action was removed to federal court, the Judicial Panel for Multi-District Litigation issued an order conditionally transferring the Action to the United States District Court for the Southern District of New York. *PlusFunds I*, 492 B.R. at 204. On March 25, 2014, the Action was remanded back to the New Jersey District Court. *See* Response ¶7; Motion ¶ 29.

*Motion to Reopen and Decision*

Under § 10.3 of the Trust Agreement, if the SPhinX Trust has not been previously terminated, "on the fifth anniversary of the [Plan] Effective Date [i.e., September 20, 2012], unless otherwise extended for cause by the Bankruptcy Court, the Trustee shall distribute all of the Assets in accordance with the Plan and immediately thereafter, the SPhinX Trust shall terminate." Molton Decl., Ex. A § 10.3. That section further provides that "[u]pon motion to the Bankruptcy Court, the Trustee shall have the right, with the approval of the Bankruptcy Court, to extend the SPhinX Trust for successive one year periods; provided, however, such approval shall be obtained no earlier than six months prior to the SPhinX Trust's then stated termination." *Id.*

The parties disagree on the status of the Trust Agreement.[10] The Defendants contend that the SPhinX Trust terminated by its own terms on September 20, 2012. The Trustee denies that the SPhinX Trust has terminated and, in any event, on February 7, 2013, the Trustee, with the written consent of the advisory board of the SPhinX Trust, entered into the Second Amendment to the Sphinx Trust Agreement (the "Second Amendment"). *PlusFunds I*, 492 B.R. at 205. That amendment modifies § 10.3 of the Trust Agreement to provide that "the Trustee may seek approval of the initial one year extension within one hundred fifty (150) days of the [termination date]." *Id.* at 205-06. The provision goes on to state that, if such initial extension is approved by the Bankruptcy Court, it "shall be effective *nunc pro tunc*" to the termination date. *Id.* The

---

[10] That disagreement plays a prominent role in the current status of the Action. On October 10, 2014, Defendants submitted a Motion to Eliminate the PlusFunds Claims as Frivolous Under Rule 16(c)(2)(A) and for Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1) (the "District Court Standing Motion"). *See* Declaration of David J. Molton in Support of Renewed Motion of the SPhinX Trustee to Reopen Chapter 11 Case Following Remand from the United States Court of Appeals for the Second Circuit ("Molton Decl.") [ECF No. 809], Ex. J. The motion seeks dismissal of the Trustee's claims based on the inability (resulting from the decisions of this Court and the district court) to extend the term of the SPhinX Trust and the alleged termination of the SPhinX Trust by its own terms under § 10.3. *Id.* For its part, the Trustee asserts that Defendants' dismissal arguments are meritless, but complains of uncertainty, delay, and incurred material costs in defending against those arguments. *See* Molton Decl. ¶¶ 11, 13. Following entry of the Second Circuit's Summary Order, the New Jersey District Court entered an agreed order "administratively terminating" the Defendants' motion "pending the Southern District of New York Bankruptcy Court's consideration of the Second Circuit's January 21, 2015 remand order." *Id.* ¶ 13, Ex. P at 2. A trial on the merits in the Action is scheduled to commence on June 22, 2015. *Id.* ¶ 13, Ex. Q at 1.

Trustee filed the Extension Motion and motion to reopen this case soon after entry into the Second Amendment.

As noted previously, on May 13, 2013, this Court denied the Trustee's motion to reopen this chapter 11 case. Notably, in doing so, the Court determined that the Defendants lack standing to object to a reopening of the case because they do not constitute "parties in interest" under § 1109(b) of the Bankruptcy Code. *See PlusFunds I*, 492 B.R. at 208. The Court also held that opening the case to "administer assets" under § 350(b) of the Bankruptcy Code was inappropriate inasmuch as the ongoing prosecution of the causes of action that are the subject of the SPhinX Trust were known at the time the case was closed. *Id*. at 209. Finally, the Court examined the factors relevant to the consideration of a request to reopen a case for cause set forth in *In re Easley-Brooks*, 487 B.R. 400 (Bankr. S.D.N.Y. 2013). Weighing the factors it found relevant to the issue of whether "cause" exists to reopen the case, the Court explained that "[(i)] there is a non-bankruptcy forum capable of addressing issues related to the [SPhinX] Trust, [(ii)] there has been no showing of prejudice resulting from denial of the Trustee's request to reopen the case, and [(iii)] there is no clearly articulated benefit to the Trustee in reopening the case." *Id*. at 210. These findings were based in large part on the Trustee's own arguments that (i) the SPhinX Trust never terminated because no distributions have been made to the SPhinX Trust beneficiary, (ii) prosecution of the causes of action is among the wind-up duties of the Trustee, and (iii) even if the SPhinX Trust is terminated, the ability to pursue the causes of action will be transferred to the Liquidator. *Id.* at 209. The Court further found that the three remaining *Easley-Brooks* factors – the length of time the case was closed, whether prior litigation determined the appropriate forum, and whether it is clear that no relief is forthcoming by reopening the case – were not directly relevant to its consideration of the motion to reopen. *Id*. at

7

210 n.7. Because the case was not reopened, the Court took no action on the Extension Motion. *Id.* at 211.

*Appeal and Remand*

As noted, the Trustee appealed the Decision to the district court.[11] On February 10, 2014, the district court affirmed the Decision in its entirety, finding that the Court (i) "reached the right result" with respect to its holding that the Defendants lack standing to object to the motion to reopen, and (ii) "acted well within its discretion in finding that the case did not need to be reopened to administer assets or for other cause." *See PlusFunds II,* 505 B.R. at 425-27. Also as noted, the Summary Order followed the Trustee's subsequent appeal to the Second Circuit. The order explains that the Second Circuit was "unable to ascertain whether the Bankruptcy Court fully considered whether any of the parties would suffer prejudice if it granted the Trustee's motion to reopen." *PlusFunds III*, 589 F. App'x. at 42 (citation omitted). The court specifically observed that although the Decision contained a finding "that there has been no showing of prejudice resulting from *denial* of the Trustee's request to reopen the case … it was silent as to whether any prejudice would result from *granting* the Trustee's request." *Id.* at 42-43 (internal quotation marks and citation omitted) (emphasis in original). The court further noted that it "intimate[s] no view on the merits of the Trustee's motion to reopen or on the question of [Defendants'] standing." *Id*.

*Discussion*

The Court first considers "what prejudice, if any, would result from reopening the [Debtor's] case." *PlusFunds III*, 589 F. App'x. at 42. Defendants contend that they will be prejudiced should the Court reopen the case and extend the term of the SPhinX Trust because the

---

[11] Throughout the appellate process, Defendants have maintained a cross appeal on the standing issue. The district court affirmed this Court's finding that the Defendants did not have standing to oppose the motion to reopen. As discussed briefly below, the Second Circuit expressed no view on the issue.

8

arguments they advanced in support of the District Court Standing Motion "would be impaired, hindered, and possibly undermined in their entirety." Response at 14. The Trustee denies that Defendants have standing to be heard on this matter and contends, in any event, that the only substantive result of reopening the case and extending the SPhinX Trust's term is that the Defendants will be required to defend the Action on the merits, which the Trustee says is no prejudice at all. Motion ¶ 38.

The Second Circuit left undisturbed the previous finding of both this Court and the district court that Defendants "do not have standing as parties in interest to object to reopening of the Debtor's chapter 11 case." *PlusFunds I*, 492 B.R. at 208; *see also PlusFunds II*, 505 B.R. at 425 ("Defendants lack standing to object to the Trustee's motion"); *PlusFunds III*, 589 F. App'x. at 43 ("We intimate no view … on the question of appellees' standing"). Nonetheless, as previously noted, the Court's analysis of whether to reopen the case "necessarily is animated to some extent" by their arguments. *PlusFunds I*, 492 B.R. at 208 (citation omitted). To that end, when viewed together with the Extension Motion, reopening the case likely will "have an adverse effect on the ability of [Defendants] to continue asserting procedural defenses in the Action relating to the current legal status and viability of the [SPhinX] Trust." *Id.* at 218. However, in the context of § 350(b) of the Bankruptcy Code, courts do not view the obligation to defend a claim on the merits as legal prejudice that weighs against the reopening of the case even when the merits would not be reached but for the reopening of the case. *See, e.g., In re Arana*, 456 B.R. 161, 174 (Bankr. E.D.N.Y. 2011) (the obligation to defend a claim on the merits is not the kind of legal prejudice that should be a bar to reopening a case); *In re Stein*, 394 B.R. 13, 18 (Bankr. E.D.N.Y. 2008) (that defendant was precluded from asserting an estoppel defense and

9

was forced to defend action on the merits was not viewed as prejudice against reopening the case.)

If the Debtor's case is reopened, Defendants may be left to defend the Action on the merits. However, that simply does not constitute prejudice that weighs against reopening the case. Indeed, according to the Trustee, the Defendants will be required to defend on the merits of the Action whether or not the case is reopened. No party will be prejudiced if the Court reopens the case. [12]

*Scope of Summary Order*

The Court now reviews the Trustee's request that it reconsider its analysis in *PlusFunds I*, reopen the case "for other cause",[13] and grant the Extension Motion as well as two subsequent requests for an extension of the SPhinX Trust through September 20, 2015. *See* Motion ¶¶ 9, 10. "Under the law-of-the-case doctrine, where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and

---

[12] Defendants' reliance on *In re Koch*, 229 B.R. 78 (Bankr. E.D.N.Y. 1999) and *In re Maloy*, 195 B.R. 517 (Bankr. M.D. Ga. 1996) is unpersuasive. To be sure, in each of those cases, the court found that the reopening of a bankruptcy case would be prejudicial to the defendant in a lawsuit filed by a former bankruptcy debtor. Of paramount concern to each of the *Koch* and *Maloy* courts, however, was the fact that each debtor had acted in bad faith. In *Koch*, the bankruptcy court found that the reopening of a chapter 7 case in order to allow the debtor to schedule an additional asset was prejudicial to a defendant in a state court action concerning the asset inasmuch as "[i]t certainly hindered [defendant's] efforts to dismiss the state court action by way of … motion for summary judgment." *Koch*, 229 B.R. at 86. The court further found, however, that the debtor had acted in bad faith in seeking to reopen and opined that were it to condone such conduct "it would encourage debtors to conceal their assets to have the claims of their creditors discharged, and then … commence an action to realize the value of those assets without their participation." *Id*. at 88. The court vacated its own prior orders reopening the chapter 7 case, amending debtor's schedules to list an undisclosed asset, and converting the reopened case to a chapter 11 case. Similarly, in *Maloy*, the court denied a motion to reopen a chapter 7 case and noted that "[i]f [d]ebtor is to enjoy some benefit from the Court's favorable consideration of [a motion to reopen] to the detriment of [the defendant in a federal lawsuit filed by the debtor who, by virtue of the reopening of the case, could be precluded from successfully asserting a judicial estoppel argument] there has to be a showing of good faith on the part of [d]ebtor." *Maloy*, 195 B.R. at 520. The court found that the debtor "failed to carry his burden of showing that the failure to list the asset was an honest mistake," and declined to reopen the case. *Id.* By contrast, here, there has been no allegation or showing of bad faith by the Trustee.

[13] Section 350(b) of the Bankruptcy Code allows a court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The request for relief in the Motion necessarily is limited to the "for other cause" prong of this provision.

10

such law of the case as was established by the appellate court." *Sompo Japan Ins. Co. Am. v. Norfolk Southern Railway Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (citation omitted). The Second Circuit was "unable to ascertain whether [this Court] fully considered whether any of the parties would suffer prejudice if it granted the Trustee's motion to reopen." *PlusFunds III*, 589 F. App'x. at 42. It vacated the district court's judgment and remanded to this Court "to explain what prejudice, if any, would result from reopening the bankruptcy case." *Id*. at 43. "[W]here the mandate limits the issues open for consideration on remand, the [trial] court ordinarily may not deviate from the specific dictates or spirit of the mandate by considering additional issues on remand." *Sompo Japan*, 762 F.3d at 175 (citation omitted). Having found that no party will suffer prejudice if the case is reopened, the Court now must determine whether that finding alters its prior determination not to reopen the case.

"'A bankruptcy judge's decision to grant or deny a motion to reopen pursuant to 11 U.S.C. § 350(b) shall not be disturbed absent an abuse of discretion.'" *PlusFunds III*, 589 F. App'x. at 42 (quoting *Smith v. Silverman (In re Smith),* 645 F.3d 186, 189 (2d Cir. 2011)); *see also In re HBLS, L.P.*, 468 B.R. 634, 638 (Bankr. S.D.N.Y. 2012) (citation omitted) (In the final analysis, "the decision to reopen a case is at the broad discretion of the bankruptcy court.") "A bankruptcy court abuses its discretion [only] when it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *In re Watkins*, No. 06 Civ. 1341 (DGT), 2008 WL 708413, at *2 (E.D.N.Y. Mar. 14, 2008) (citations omitted).

The Bankruptcy Code does not define "cause" sufficient to reopen a case. *See, e.g., In re Cruz*, 254 B.R. 801, 804 (Bankr. S.D.N.Y. 2000) (citing *In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996)). In the Decision, the Court applied the factors cited in *In re Easley-Brooks*, 487 B.R. 400, 406 (Bankr. S.D.N.Y. 2013) as relevant to the determination of whether "cause" exists to

11

reopen the case under section 350(b).[14]  The three factors that the Court previously found relevant – whether a non-bankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case, whether any parties would suffer prejudice should the court grant or deny the motion to reopen, and the extent of the benefit by reopening – remain the factors relevant to the Trustee's renewed motion.[15]

Adding our determination that no party will be prejudiced if this case is reopened to the mix does not compel a different outcome.  While the Trustee's arguments suggest that whether any party will be prejudiced if a case is reopened is the paramount factor in a determination of whether to reopen a case, it is but one of many that the Court must balance.  Here, although there is no prejudice to Defendants if the case is reopened, there also (i) is a non-bankruptcy forum capable of addressing issues related to the SPhinX Trust, (ii) has been no showing of prejudice resulting from denial of the Trustee's request to reopen the case, and (iii) is no clearly articulated benefit to the Trustee in reopening the case.[16]  *See PlusFunds I*, 492 B.R. at 210.  The Court is

---

[14] The six factors that the *Easley-Brooks* court identified as relevant to whether a case should be reopened for "cause" are: (i) the length of time that the case was closed, (ii) whether a non-bankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case, (iii) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum, (iv) whether any parties would suffer prejudice should the court grant or deny the motion to reopen, (v) the extent of the benefit by reopening, and (vi) whether it is clear at the outset that no relief would be forthcoming by granting the motion to reopen. *See Easley-Brooks*, 487 B.R. at 407 (*citing In re Otto*, 311 B.R. 43, 47 (Bankr. E.D. Pa.2004)).

[15] For the same reasons previously articulated, the remaining factors (length of time the case was closed, whether prior litigation determined the appropriate forum, and whether it is clear that no relief is forthcoming by reopening the case) are not directly relevant to the Court's analysis. *See PlusFunds I*, 492 B.R. at 210 n.7.

[16] The Court notes the Trustee asserted at oral argument that the Court "misapprehended" this factor and focused on whether reopening the Debtor's chapter 11 cases is essential (instead of beneficial) to the Trustee.  03/26/15 Tr. 22:25-23:3 (Molton).  As observed above, reconsideration of this Court's prior analysis goes beyond the mandate set forth in the Summary Order.  Assuming, *arguendo*, however, that the Trustee's assertion has merit, it is unclear what benefit necessarily results if the Court reopens this case.  In order to find a benefit to the Trustee necessarily would require that the Court extend the term of the SPhinX Trust.  Without examining the merits of the Trustee's arguments to that end, the Court finds that even if it were to reopen this case and extend the trust term, the Trustee still would have to address the tax consequences of the current status of the SPhinX Trust.  Indeed, the Court previously acknowledged that the IRS will not be bound by any decision rendered here. *See* 03/20/13 Tr. 30:24-31:5 (Peck, J.) ("One of the questions that I have is the potential for disconnect between a determination made by a Bankruptcy Court that hypothetically ratifies the actions of the trustees and positions that may be take n by the IRS

obliged to weigh all of these factors when making its decision, and the fact that no party will be prejudiced by the reopening of the case does not, by itself, constitute cause to reopen.[17]

The Trustee continues to contend that (i) the SPhinX Trust never terminated because no distributions have been made to its beneficiaries, (ii) prosecution of the causes of action is among the wind-up duties of the Trustee, and (iii) even if the SPhinX Trust is terminated, the ability to pursue the causes of action will be transferred to the Liquidator.  Furthermore, although the Action has been remanded to the New Jersey District Court in the intervening months since this Court issued its Decision, there still is a court that is in a good position to determine the status of the SPhinX Trust within the context of the pending litigation.  In addition, the Court's conclusion that the Trustee's alleged ability to prosecute the Action indicates no clear prejudice to the Trustee in declining to reopen the case remains unchanged as does its finding that the reopening of the Debtor's case to determine the status of the SPhinX Trust is not essential to preserve the Action.  Considered as a whole, then, the relevant *Easley-Brooks* factors, combined with the

---

that may be inconsistent therewith … .  [I]t is entirely possible that regardless of what the Court may do, … there are material adverse tax consequences that need to be addressed.")

[17] The Trustee cites to *Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860 (B.A.P. 2d Cir. 1997) to urge the opposite conclusion. Motion ¶ 13. In its remand order, the Second Circuit cited to *Emmerling* for the proposition that among the "numerous factors and equitable concerns" that a court may consider in determining whether to reopen a case, "[a] court of equity must consider whether reopening a case would prejudice the adversary or cause a change in the adversary's position." 589 F. App'x. at 42 (citing *Emmerling*, 223 B.R. at 864). It is the next sentence of the *Emmerling* decision upon which the Trustee relies. It provides that "[i]n the absence of some meaningful prejudice, a court of equity would abuse its discretion by barring the reopening of a case." 223 B.R. at 865. However, when the quoted language is read in the context of that opinion, it is clear that the court was analyzing the plaintiff's "threshold" argument that the motion was barred by the doctrine of laches, noting that "laches" was one of several factors relevant to the motion to reopen a bankruptcy case and vacate a default judgement. *Id*. at 864. In that light, the court's statement is not particularly noteworthy since it is well settled that an element of the laches defense is prejudice to the party asserting the defense. *See, e.g., Masterson v. NY Fusion Merch., LLC*, 300 F.R.D. 201, 206 (S.D.N.Y. 2014) (quoting *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1372 (Fed.Cir.2001)) ("In order to succeed on a defense of laches, a defendant has the burden of proving (1) that the "[plaintiff] unreasonably and inexcusably delayed filing suit," and (2) that the delay "resulted in material prejudice to the defendant.""). In any event, although the *Emmerling* court found no merit to the laches argument, it did not rest its decision to reopen the debtor's case on the lack of prejudice to the plaintiff or weigh that factor more heavily than other factors. Indeed, that was not an element considered by the court in assessing "cause." Rather the court found that in that case, the "statutory 'cause' to reopen under section 350(b) . . . depends upon whether cause exists to vacate the default judgment since that is the sole purpose for reopening the case." *Id* at 865. The court found ample cause to vacate the default, *id*. at 865-869, and reopened the case with instructions that the default be vacated.  *Id.* at 869.

finding that no party would be prejudiced if the Court were to reopen the Debtor's bankruptcy case, continue to demonstrate that there is insufficient cause to reopen the Debtor's case.

### *Conclusion*

For the reasons stated, the Trustee has failed to meet its burden to show cause to reopen the Debtor's case, and the case shall remain closed. The Court need not, and will not, reach the Trustee's request to approve its motions to extend the SPhinX Trust. The parties are directed to submit an agreed order consistent with this Memorandum Decision within 14 days.

SO ORDERED.

Dated: April 21, 2015
New York, New York

/s/ *James L. Garrity, Jr.*
UNITED STATES BANKRUPTCY JUDGE